UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INGRID BUQUER, BERLIN URTIZ, and LOUISA ADAIR, on their own behalf and on behalf of those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) NO. 1:11-cv-00708-SEB-MJD ) |
| CITY OF INDIANAPOLIS, et al | ) ) |
| Defendants. | ) |

# Order

This matter is before the Court on Defendants Johnson County Prosecutor and Marion County Prosecutors' (collectively "Defendants") Motion Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure [Dkt. 132], Defendants' Motion for Extension of Time to File Responses to Motion for Summary Judgment [Dkt. 136], and Defendant City of Franklin's Motion to Join Defendants' Motion for Extension of Time to File Responses [Dkt. 144]. The Court hereby **GRANTS** the City of Franklin's Motion to Join State Defendants' Motion for Extension of Time to File Responses [Dkt. 144]. The Court also hereby **GRANTS** Defendants' Motion for Extension of time so that Defendants will have thirty days from the date of this Order to respond to the Summary Judgment Motion. [Dkt. 136]. For the reasons discussed below, the Court **DENIES** Defendants' Rule 56(d) Motion [Dkt. 132].

## I. Background

This matter involves two provisions of the Senate Enrolled Act ("SEA") 590. The first challenged provision, Section 20 of SEA 590, amends Indiana Code § 35-33-1-1(1) by giving

1

state and local law enforcement officers discretion to make a warrantless arrest of a person when the officer has (1) a removal order for the person; (2) a detainer or notice of action for the person issued by the United States Department of Homeland Security ("DHS"); or (3) probable cause to believe that the person has been indicted for or convicted of one or more aggravated felonies. The second challenged provision, Section 18 of SEA 590, codified as § 34-28-8.2-1, *et seq.*, creates a new infraction under Indiana law for any person who knowingly or intentionally offers or accepts a consular identification card ("CID") as a valid form of identification for any purpose. Section 18 does not apply to law enforcement officers who are presented with a CID during an investigation of a crime.

On June 24, 2011, this Court granted Plaintiffs' Motion for Preliminary Injunction and enjoined the Defendants from enforcing the two challenged provisions until further order from the Court. [Dkt. 79]. On November 20, 2011, Plaintiffs filed a Motion for Summary Judgment. [Dkt. 122]. In their Motion, Plaintiffs argue that Section 20 violates the Fourth Amendment to the United States Constitution by authorizing warrantless arrests with no probable cause to believe that a crime has occurred and that federal law preempts the provision. As to Section 18, Plaintiffs argue that federal law and treaties preempt the provision and that it violates the Fourteenth Amendment's Due Process clause. This Court held a hearing on Defendants' Motions on January 23, 2012 and on February 17, 2012 and took the Motions under advisement.

## II. Legal Standard

Rule 56(d), provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The nonmoving party is required to make a "'good faith showing that it cannot respond ….'" *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (quoting *United States v. All Assets and Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995)). The nonmoving party's Rule 56(d) affidavit should provide (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why these efforts were unsuccessful. *See Coward v. Town and Village of Harrison*, 665 F. Supp. 2d 281, 301 (S.D.N.Y. 2009); *see also Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006); *Reed v. Lawrence Chevrolet, Inc.*, 14 F. App'x. 679, 685 (7th Cir. 2001).

## III. Discussion

Defendants argue that they need additional discovery to obtain facts necessary for their response to Plaintiffs' Motion for Summary Judgment. At the time of the hearing on February 17, 2012, six items remained at issue. Defendant seek to depose two agents from the Office of Immigration and Custom Enforcement ("ICE") and seek a Rule 30(b)(6) deposition of DHS. Defendants also seek responses to their Freedom of Information Act ("FOIA") requests to DHS and the United States Department of State. The Court will address each item below.

**A. Deposition of Immigration and Custom Enforcement ("ICE") Agents**

Defendants want to depose ICE agents Christopher Bryant and Gary Woolf. Agent Bryant is a field agent, while Agent Woolf is the Resident Agent in Charge for the Indianapolis Office, which Defendants believe covers the entire state of Indiana. Defendants seek similar information from each agent, Bryant from a field agent's perspective and Woolf from a statewide perspective.

1. **Facts Sought**

According to Defendants' affidavit, they seek information "regarding whether there is enforcement of immigration laws in the State of Indiana." [Dkt. 132 Ex. 1 at ¶ 12(c)]. At the hearing, Defendants purported to seek somewhat different and more expansive information from the agents. Defendants want to obtain information regarding how state and local law enforcement officers would know whether a person had a removal order, detainer, or notice of action.[1] If state and local law enforcement officers receive these documents from ICE, Defendants want to know what other information is included along with these documents. Defendants also seek the ICE agents' opinions on whether Section 20 conflicts with or poses an obstacle to federal law and how federal laws and Section 20 will interact. Lastly, Defendants focus on what enforcement efforts are being conducted in the State of Indiana and seek information regarding whether there are sufficient resources in Indiana for the enforcement of immigration laws, the number of individuals in Indiana that have removal orders or detainers, and whether the agents would like Indiana's input and help on immigration matters.

2. **How These Facts are Reasonably Expected to Create a Genuine Issue of Material Fact**

Neither Defendants' affidavit nor their brief in support of their Motion address how the facts sought from the ICE agents are expected to create a genuine issue of material fact. At the hearing, Defendants shed some light in this regard, but still failed to identify any material fact relevant to the pending Motion for Summary Judgment that might be put at issue by the agent's testimony.

With regard to the Plaintiffs' Fourth Amendment argument, Defendants contend that the facts they seek go toward the reasonableness of law enforcement's actions, because only certain

---

[1] The Court notes Defendants' admission that they never sought this information from any state or local law enforcement officers. [February 17, 2012 Oral Argument at 1:54].

4

notices would ever get to law enforcement officers. However, as already explained in the Preliminary Injunction Order, Defendants' interpretation is "entirely fanciful … given that it completely ignores the plain language of the statute … [which] expressly provides that state and local enforcement officers 'may arrest' individuals for conduct that all parties stipulate and agree is not criminal." [Dkt. 79 at 21]. Additionally, Plaintiffs' argument is that Indiana can never enforce Section 20 constitutionally; therefore, how law enforcement officers obtain information regarding whether a person had a removal order, detainer, or notice of action is irrelevant to the pending Motion. As such, Defendants have not shown that the facts sought could reasonably create a genuine issue of material fact with regard to the pending Motion for Summary Judgment, because the facts sought would not affect the outcome of that Motion. *See Fanslow v. Chicago Mfg. Ctr., Inc.,* 384 F.3d 469, 478 (7th Cir. 2004) (explaining that a fact is material if it might affect the outcome of the suit).

With regard to Plaintiffs' preemption argument, it is Defendants' theory that there would have to be cooperation between local law enforcement officers and federal agents and evidence of cooperation disputes Plaintiffs' claim that Section 20 is an obstacle to federal immigration law. Defendants believe the ICE agents' views regarding whether Section 20 conflicts with or poses an obstacle to federal immigration law will create a genuine issue of material fact regarding preemption.

The issue of preemption, however, is largely a legal question. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (citations omitted). Defendants argue *Wyeth v. Levine,* 555 U.S. 555 (2009) supports their argument that courts should give some weight to an agent's views regarding preemption. Defendant's reliance on *Wyeth* is misplaced.

In *Wyeth*, the Court found that in prior cases, "some weight" had been given to an agency's views about the impact of tort law on federal objectives noting that

> while agencies have no special authority to pronounce on pre-emption … they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 566-57. Defendants, however, cannot stretch *Wyeth* so far as to make the information they seek from ICE Agents Bryant and Woolf relevant to the preemption analysis. Neither agent speaks on behalf of ICE or DHS. Thus, Defendants have failed to show how the agents' views could reasonably create a genuine issue of material fact with regarding to the pending Motion for Summary Judgment.

Nor is Defendants' focus on the resources devoted specifically to the State of Indiana material. Likewise, the number of people in Indiana with removal orders or detainers is not material. Defendants argue, "there is no evidence that the federal government is enforcing immigration law in the State of Indiana." [Dkt. 133 at 3-4]. Thus, under Defendants' theory of the case, there is no conflict or obstacle in the State of Indiana. Taking Defendants' theory to its logical conclusion would mean that Section 20, while not preempted in Indiana, might be preempted in a state where more resources are devoted to enforcing immigration laws. Defendants' argument on this point is fatally flawed.

Preemption occurs through the "'direct operation of the Supremacy Clause.'" *Kurns v. Railroad Friction Products Corp.*, ---S. Ct. ---, 2012 WL 631857, at *4 (U.S. 2012) (quoting *Brown v. Hotel Employees*, 468 U.S. 491, 501 (1984)). Under the Supremacy Clause, federal law "'shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to

the Contrary notwithstanding.'" *Id.* (quoting U.S. Const., Art. VI, cl. 2). Thus, preemption has a national effect and applies uniformly throughout the nation.

Accordingly, whether Section 20 poses an obstacle to enforcement of immigration laws requires an analysis of what occurs at the national level concerning enforcement of immigration laws, not merely what occurs in the State of Indiana. Defendants' whack-a-mole approach to preemption is inconsistent with the Supremacy Clause because it would require a state-by-state analysis of whether preemption exists and would create a presumption that preemption could exist in some states and not others. Thus, Defendants have failed to show how information regarding the resources devoted to Indiana could reasonably create a genuine issue of material fact relevant to the pending Motion for Summary Judgment.

## B. Rule 30(b)(6) Deposition of DHS

Nowhere in Defendants' affidavit do they mention a Rule 30(b)(6) deposition of DHS. While this is discovery Defendants are free to conduct, Defendants have not complied with the requirements of Rule 56(d). For that reason alone, Defendants have failed to make a good faith showing that it cannot respond to the summary judgment motion without the Rule 30(b)(6) deposition of DHS.

### 1. Facts Sought

Even if this Court considers Defendants' Rule 30(b)(6) deposition as properly within its Rule 56(d) Motion, Defendants still fail to satisfy Rule 56(d)'s requirements. At the hearing, Defendants argued that the Rule 30(b)(6) deposition will allow them to get additional information as to how DHS expects local officials to cooperate with the federal government and to gain facts necessary under *Wyeth*. Additionally, a Rule 30(b)(6) deposition will purportedly

assist Defendants with authenticating documents from their FOIA requests, which Defendants concede they do not need to respond to the Motion for Summary Judgment.

**2. How These Facts are Reasonably Expected to Create a Genuine Issue of Material Fact**

While a Rule 30(b)(6) deposition arguably would, under *Wyeth,* allow Defendants to question the DHS designee about the agency's view regarding the impact of Section 20 on federal immigration law, a Rule 30(b)(6) deposition would not create a genuine issue of material fact relative to the pending Motion for Summary Judgment. As explained in the Preliminary Injunction Order, the Immigration and Nationality Act ("INA") "'established a comprehensive federal statutory scheme for regulation of immigration and naturalization and set the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" [Dkt. 79 at 3 (quoting *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1973 (2011)]. As such, the INA empowers not only the DHS to administer and enforce immigration, but the Department of Justice ("DOJ"), and the Department of State, among other federal agencies. [*Id*.]. Because of the comprehensive nature of the federal statutory scheme, and the involvement of several federal agencies, Defendants have failed to show how one agency's views regarding how that particular agency expects local officials to cooperate with the federal government on immigration could reasonably create a genuine issue of material fact.

Moreover, while the *Wyeth* Court noted that in prior cases it gave some weight to an agency's view, it also stated that it did so only "[a]fter conducting our own pre-emption analysis" and that the agency's view that the state law interfered with its regulation provided "further support for our independent conclusion that the plaintiff's tort claim obstructed the federal regime." *Wyeth*, 555 U.S. at 580. Thus, this Court must conduct its own preemption analysis and make its own independent conclusion regarding preemption. Any "support" the deposition

in question might provide would not create a genuine issue of material fact on any issue relating to the pending Motion for Summary Judgment.

**C. FOIA Requests to DHS and Department of Justice ("DOJ")**

Defendants also argue they need information from their FOIA requests sent to departments within DHS and the DOJ.[2] The first, marked exhibit B, was sent to the U.S. Citizenship & Immigration Services within the DHS. The second, marked exhibit F, was sent to the DOJ's Civil Rights Division. Because both seek similar information and suffer from the same infirmities relative to the instant motion, the Court addresses them together.

**1. Facts Sought**

Both FOIA requests focus solely on information relating to the State of Indiana. For example, exhibit B requests the amount and allocation of funds for enforcement of immigration laws in the State of Indiana, number of personnel utilized exclusively for enforcement of immigration laws in the State of Indiana, and the number of unauthorized immigrant population currently in Indiana. Exhibit E requests similar information, but also requests the number of removal proceedings brought against aliens apprehended or domiciled in Indiana between 2008 and 2011, the number of detainers, and records related to illegal activities or crimes committed by undocumented or illegal aliens in Indiana.

**2. How These Facts are Reasonably Expected to Create a Genuine Issue of Material Fact**

At the hearing, Defendants argued, "[if] our statute is not an obstacle to what the federal government is doing within the State of Indiana, then this statute is not preempted under federal law." [February 17, 2012 Oral Argument at 2:22]. As previously discussed, however, preemption is not determined on a state-by-state basis. Even if Defendants present evidence that

---

[2] At the hearing, Defendants provided the Court with six FOIA requests the Court marked as Exhibits A-F. Defendants reported that exhibits A and C were complete and that Exhibit D should be completed by February 24, 2012 leaving only Exhibits B, E, and F outstanding.

few resources are devoted to enforcing immigration in the State of Indiana that does not mean the federal government is doing nothing to enforce immigration. Moreover, efforts elsewhere, such as in states that border a foreign nation, have an impact on immigration in Indiana, something the State fails to consider. For example, many illegal aliens might never reach the State of Indiana because of efforts elsewhere. This is an example of why preemption must be considered on a national and not a state-by-state basis. Otherwise, each State receiving fewer federal resources could argue its laws are not preempted by federal immigration laws. As such, Defendants have failed to show that the information they seek could reasonably create a genuine issue of material fact regarding whether federal law preempts Indiana law.

### D. FOIA Requests to the Department of State

Lastly, in Exhibit E, Defendants seek information relating to CIDs from the Office of Information Programs and Services within the Department of State.

#### 1. Facts Sought

In their affidavit, Defendants state that they requested information about procedures and protocols for reviewing and monitoring the issuance of CIDs, the number of consulates and the countries with consulates in the United States, and information regarding fraudulent and counterfeit identification cards. [Dkt. 132 Ex. 1 at ¶ 8]. Additionally, Defendants seek information about the number of identification cards issued by the Department of State to United States citizens. [*Id.* at ¶ 10].

#### 2. How These Facts are Reasonably Expected to Create a Genuine Issue of Material Fact

According to their affidavit, this information is needed to "dispute the veracity of the assertions by former Consul Aguilar that consular identification cards are extremely difficult to forge and are not issued without a review of the background of the requesting individual." [*Id.* at

10

¶ 9]. However, the information sought in Defendants' FOIA request does not address those issues. The closest request is for information pertaining to the security and authenticity issues of CIDs. [Exhibit E at ¶ 6]. However, there is no evidence to suggest the Department of State would know whether the Mexican consulate, or any other consulate, issues CIDs without first reviewing the background of the requesting individual. Moreover, if Defendants want to present evidence regarding the difficulty of forging CIDs, they can hire an expert to give an opinion on the matter and do not need information from the Department of State.

Defendants also seek information regarding the number of counterfeit, fraudulent, or unauthorized CIDs confiscated by federal officials or law enforcement. [*Id.* at ¶ 5]. This request does not address what background reviews the consulate conducts, because counterfeit, fraudulent, or unauthorized CIDs are not originating from the consulate, hence their fraudulent nature. Nor does the number of confiscated CIDs address the difficulty of forgery. For example, officials could confiscate a large number of CIDs because they are so difficult to forge that counterfeits are easy to detect. Similarly, officials could confiscate very few CIDs, which could mean that there are few counterfeit or fraudulent CIDs, or it could mean counterfeit and fraudulent CIDs are difficult to detect. Thus, in disputing Consul Aguilar's assertion regarding the difficulty of forging CIDs, it is meaningless to know the number of confiscated CIDs.

Furthermore, Plaintiffs' summary judgment argument is that the State's singling out of CIDs from all other forms of identification is irrational. [Dkt. 123 at 32]. Plaintiffs do not argue that Defendants lack any rational basis for concern; rather, the relevant issue is whether CIDs are more subject to fraud than other forms of identification. Nothing Defendants seek from the Department of State is likely to show that CIDs are any more or less reliable than any other form of identification.

At the hearing, Defendants argued that, under rational basis review, a legislature can enact piecemeal legislation, which can be over or under inclusive and that the legislature does not have to address every evil at one time. That argument certainly has support from case law. *See, e.g.*, *Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 466 (1949) ("It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."); *Sutker v. Illinois State Dental Soc.*, 808 F.2d 632, 635 (7th Cir. 1986) (explaining that legislatures may implement programs step-by-step). Defendants are free to make that argument in their response, but that argument requires no additional facts.

With regard to Plaintiffs' preemption argument, Defendants have failed to show that the information sought from the Department of State could reasonably create a genuine issue of material fact relevant to the pending Motion for Summary Judgment. Plaintiffs argue that Provision 18 would negatively impact the United States' treaty obligations and its foreign relations. The majority of the information Defendants seek goes to the issue of fraudulent CIDs. However, Defendants argue that information regarding the number of identification cards issued by the Department of State to United States citizens will assist them in "refuting the allegations that Indiana's law will have international repercussions." [Dkt. 132 Ex.1 at ¶ 11]. How this information might be helpful remains a mystery. Whether the United States has issued zero or millions of identification cards is immaterial. What is material is how foreign nations respond to those identification cards, if, and, when issued by the Department of State given enactment of Section 18. Therefore, Defendants have not shown how these facts could reasonably create a genuine issue of material fact relevant to the pending Motion for Summary Judgment.

## IV. Conclusion

For the above stated reasons, the Court hereby **DENIES** Defendants' 56(d) Motion [Dkt. 132]. Defendants shall have thirty days from the date of this Order to respond to Plaintiffs' Motion for Summary Judgment [Dkt. 122].

Dated: 03/09/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:

Angela Denise Adams
LEWIS & KAPPES
aadams@lewis-kappes.com

Donald G. Banta
OFFICE OF THE ATTORNEY GENERAL
donald.banta@atg.in.gov

William W. Barrett
WILLIAMS HEWITT BARRETT & WILKOWSKI LLP
wbarrett@wbwlawyers.com

Jose J. Behar
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
jbehar@hsplegal.com

Shiu-Ming Cheer
NATIONAL IMMIGRATION LAW CENTER
cheer@nilc.org

Adam Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

Katherine Desormeau
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
kdesormeau@aclu.org

Patricia Orloff Erdmann
OFFICE OF THE ATTORNEY GENERAL
Patricia.Erdmann@atg.in.gov

Kenneth J. Falk

ACLU OF INDIANA
kfalk@aclu-in.org

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
jefferson.garn@atg.in.gov

Lee Gelernt
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
lgelernt@aclu.org

Lynnette Gray
JOHNSON GRAY& MACABEE
vhunter@embarqmail.com

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
ojadwat@aclu.org

Linton Joaquin
National Immigration Law Center
joaquin@nilc.org

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Joshua Karsh
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
jkarsh@hsplegal.com

Matthew J. Piers
HUGHES SOCOL PIERS RESNICK & DYM, LTD
mpiers@hsplegal.com

Clifford Lee Reeves II
U.S. DEPARTMENT OF JUSTICE
lee.reeves@usdoj.gov

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Andre I. Segura
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
asegura@aclu.org

Karen Tumlin
NATIONAL IMMIGRATION LAW CENTER
tumlin@nilc.org

Cecillia D. Wang
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
cwang@aclu.org

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org