UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INGRID  BUQUER,<br>BERLIN  URTIZ,<br>LOUISA  ADAIR on their own behalf and<br>on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF INDIANAPOLIS,<br>MARION COUNTY PROSECUTOR in<br>his official capacity,<br>CITY OF FRANKLIN,<br>JOHNSON COUNTY SHERIFF in his<br>official capacity,<br>JOHNSON COUNTY PROSECUTOR in<br>his official capacity,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:11-cv-00708-SEB-MJD |

**ORDER DENYING MOTION TO INTERVENE AND DENYING AS MOOT
DEFENDANTS' MOTION FOR RECONSIDERATION AND MOTION TO
STRIKE**

By their motion, three Indiana state senators seek to have this court resolve the

internecine disagreement between themselves and the Indiana Attorney General over the

strategy to be pursued in this litigation by Defendants.  Having carefully reviewed the

senators' request, we cannot endorse the result they seek, and their motion to intervene

must be denied.  As would-be suitors these three legislators lack the power to substitute

themselves for the Office of the Attorney General in order to pursue their own strategic

litigation preferences.

1

The Complaint in this class action challenges the constitutionality of Section 18 (currently codified at Indiana Code § 34-28-8.2) and Section 20 (currently codified at Indiana Code § 35-33-1(1)(a)(11)-(13)) of the 2011 Senate Enrolled Act ("SEA") 590.[1] On June 24, 2011, our court entered a preliminary injunction in favor of Plaintiffs enjoining Defendants from enforcing Sections 18 and 20 until further order of the Court. On November 20, 2011, Plaintiffs filed their motion for summary judgment and supporting memorandum. On December 21, 2011, Defendant City of Indianapolis filed a cross-motion for summary judgment. After discovery, on April 9, 2012, the Office of the (Indiana) Attorney General, representing the Marion and Johnson County Prosecutors ("the State Defendants"), filed its response opposing Plaintiffs' motion for summary judgment. In its response, the Office of the Attorney General requested not only that Plaintiffs' motion be denied but also that summary judgment be issued for the state officials. On April 20, 2012, Plaintiffs filed their reply in support of their motion for summary judgment, at which point the motion was fully briefed.

On June 25, 2012, before Plaintiffs' pending summary judgment motion was decided, the United States Supreme Court handed down its ruling in *Arizona v. United States*, 132 S.Ct. 2492 (2012). On July 17, 2012, with this court's permission, Plaintiffs filed a notice of supplemental authority asserting that "[t]he Supreme Court's holding in

---

[1] Section 20 amends Indiana Code ' 35-33-1-1(1), by adding new sections (a)(11)-(a)(13), authorizing state and local law enforcement officers to make a warrantless arrest of a person when the officer has a removal order issued for the person by an immigration court, a detainer or notice of action issued for the person by the United States Department of Homeland Security, or has probable cause to believe the person has been indicted for or convicted of one or more aggravated felonies. Section 18 creates a new infraction under Indiana law for any person (other than a police officer) who knowingly or intentionally offers or accepts a consular identification card as a valid form of identification for any purpose.

*Arizona* is entirely conclusive of the issues presented by Class A in this case, which has challenged the 'arrest provisions' in Section 20 of SEA 590." Docket No. 186 at 4. Plaintiffs further maintained that, with regard to Section 18, although not directly addressing the issue, *Arizona* "underscores the arguments made on behalf of Class B regarding Section 18 of SEA 590, which prohibits the use or acceptance of consular identification cards under most circumstances." *Id.* at 5.

On July 31, 2012, the Office of the Attorney General filed a response to the supplemental authority stressing that *Arizona* did not directly address the issue of consular identification cards addressed in Section 18 of SEA 590, and stating: "[t]he Attorney General submits the issue to the Court for its determination of [the consular identification card] issue, with the recommendation that the State should enjoy the right to define what identification it deems reliable and acceptable for government purposes, including licensed occupations." Docket No. 188 at 3. With regard to Section 20, the Attorney General indicated that, based on the Supreme Court's holding in *Arizona*, he recognized that warrantless arrests of persons with a removal order, notice of action, or a commission of an aggravated felony are unconstitutional and therefore "[w]arrantless arrests under those circumstances and justifications will not be defended and a ruling by this Court to that effect will be accepted. However, a federal, state, or immigration detainer justified an arrest before Ind. Code 35-33-1-1, and still justifies an arrest after the *Arizona* decision." *Id.* at 2.

Despite the fact that the Attorney General's April 9, 2012 summary judgment response remains pending before this Court and that he has not consented to judgment, on

3

September 4, 2012, pursuant to Rule 24 of the Federal Rules of Civil Procedure, Indiana State Senators Mike Delph, Phil Boots, and Brent Steele, three of the state senators who originally co-authored and voted for SEA 590, filed a Motion to Intervene [Docket No. 190], seeking to intervene in their official capacities as Indiana State Senators on the side of Defendants to defend the constitutionality of SEA 590.  Both Plaintiffs and the State Defendants have filed responses in opposition to the motion to intervene.  Additionally, on September 12, 2012, the State Defendants filed a Motion for Reconsideration [Docket No. 197] of the Court's September 10, 2012 Order Granting Motion to Appear Pro Hoc Vice and a Motion to Strike the Motion to Intervene [Docket No. 198].  On October 3, 2012, the State Senators filed a combined reply to the motion to intervene and response to the State Defendants' motions.  On October 12, 2012, the State Defendants filed a reply in support of their motion to reconsider and motion to strike.  Having now all been fully briefed, we address these three currently pending motions.

## Discussion

### I.     Intervention by Right

The State Senators' motion to intervene seeks leave to intervene as of right, pursuant to section 24(a)(2) of the Federal Rules of Civil Procedure.  Under Rule 24(a)(2), a party seeking intervention of right must show: "(1) timeliness; (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties."  *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002) (citation omitted).  If any of these criteria are not met, "the district court

4

must deny intervention of right." *Id.* (citing *United States v. 36.96 Acres of Land*, 754 F.2d 855, 858 (7th Cir. 1985)).

While noting a circuit split on the issue, the Seventh Circuit has ruled that Rule 24(a)(2)'s requirement that the proposed intervenor possess an "interest" relating to the subject of the underlying action incorporates the requirement that the party seeking intervention possess Article III standing. *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 984-85 (7th Cir. 2011); *see also Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009). "To establish standing under Article III, a prospective intervenor must show: (1) he or she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 211 (D.D.C. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)).

## A. Standing/Rule 24(a)(2) Interest Requirement

We turn initially to address the issue of standing and the Rule 24(a)(2) interest requirement.[2]  The proposed intervenors contend that, as the co-authors of SEA 590, they have an interest in protecting the exercise of their legislative power to introduce and pass laws in the areas of police arrest power and the regulation of identification documents

---

[2] Because we deny intervention as of right on the other grounds discussed in detail below, the element of timeliness is deferred until our discussion of permissive intervention, *infra*, where it is addressed in detail.

sufficient to confer standing.  They argue that a preemption holding by the Court in this case not only invalidates the legislation that they co-authored, but also precludes them from sponsoring and enacting future legislation on similar subjects.  The three legislators also contend that they have a related interest in preventing the nullification of their votes in favor of SEA 590 sufficient to confer standing under *Coleman v. Miller*, 307 U.S. 433 (1939).

Although the United States Supreme Court has seldom had occasion to address the issue of legislative standing, it has taken up the issue in two seminal cases – *Coleman* and *Raines v. Byrd*, 521 U.S. 811 (1997).  In *Coleman*, the Supreme Court held that a group of twenty state legislators who had voted against a proposed child labor amendment to the federal constitution had standing to challenge the State Lieutenant Governor's authority to cast a deciding vote in favor of the amendment because they had "a plain, direct and adequate interest in maintaining the effectiveness of their votes."  307 U.S. at 438.  The three legislators in the case before us argue that a preemption finding here would similarly nullify their votes in favor of SEA 590, depriving them of any legislative recourse following a negative decision.  Thus, they contend that the Attorney General's failure to defend SEA 590 in the manner that they desire is akin to the Lieutenant Governor's actions challenged in *Coleman*.

We disagree.  The Supreme Court clarified the scope of its *Coleman* holding in *Raines*.  In *Raines*, six members of the United States Congress who had voted against the Line Item Veto Act filed suit challenging the constitutionality of the law after it was passed, arguing that the Act limited their institutional power as legislators because it gave

the President the power to veto certain measures after he signed them into law.  The

Court rejected the members' contention, stating:

> [O]ur holding in *Coleman* stands (at most …) for the proposition that
> legislators whose votes would have been sufficient to defeat (or enact) a
> specific legislative Act have standing to sue if that legislative action goes
> into effect (or does not go into effect), on the ground that their votes have
> been completely nullified.
>
> It should be equally obvious that appellees' claim does not fall within our
> holding in *Coleman*, as thus understood.  They have not alleged that they
> voted for a specific bill, that there were sufficient votes to pass the bill, and
> that the bill was nonetheless deemed defeated.

521 U.S. at 823-24.

Guided by this analysis in *Coleman* and *Raines*, we find that the three legislators

here have not alleged a vote nullification injury sufficient to bestow standing in this case.

Unlike the situation presented in *Coleman*, these proposed intervenors do not claim that a

bill they voted for "would have become law if their vote had not been stripped of its

validity …."  *Raines*, 521 U.S. at 824 n.7.  It is undisputed that SEA 590 was properly

enacted by the Indiana General Assembly and signed by the Governor.  Thus, this is not a

case analogous to *Coleman* in which the three legislators' votes in favor of SEA 590 were

completely nullified by an allegedly improper procedure by the executive branch that

interfered in the legislative process.  Rather, the proposed intervenors merely disagree

with the litigation strategy decisions made by the Indiana Attorney General.

In *Planned Parenthood of Mid-Missouri and East Kansas, Inc. v. Ehlmann*, 137

F.3d 573 (8th Cir. 1998), the Eighth Circuit addressed a situation closely analogous to the

one before us.  In *Ehlmann*, the appellate court affirmed the district court's denial of a

motion to intervene filed by ten Missouri state legislators seeking to intervene in litigation challenging a Missouri legislative enactment defended by the Missouri Attorney General, after the Attorney General indicated that he did not intend to appeal the district court's ruling that the enactment was unconstitutional.  There, the Eighth Circuit noted that the parties' dispute limited to a disagreement between the legislative and executive branch over litigation strategy, which differentiated that case from *Coleman*.  The Eighth Circuit observed: "*Coleman* related to whether legislators had standing in a lawsuit where they contended an allegedly illegal action of the Lieutenant Governor nullified their votes.  It does not hold that when a court declares an act of the state legislature to be unconstitutional, individual legislators who voted for the enactment can intervene." *Ehlmann*, 137 F.3d at 578.[3]  Because we also note that the case before us does not involve nullification resulting from improper intervention into the legislative process, the three legislators seeking to intervene have not demonstrated that they have standing under a vote nullification theory based on *Coleman*.

Nor is any separate claimed interest by them "in protecting the exercise of their legislative power to introduce and pass laws in the fields of police arrest power and the regulation of identification documents" sufficiently particularized to confer standing. The individual legislators contend that, as the co-authors of SEA 590, they have a distinct

---

[3] We remain mindful of the Eighth Circuit's caution in *Ehlmann* that: "Justice Souter [in his concurring opinion in *Raines*] cautioned against courts embroiling themselves in a political interbranch controversy between the United States Congress and the President. [citation omitted] Federal courts should exercise this same caution when, as in this case, there exists a political interbranch controversy between state legislators and a state executive branch concerning implementation of a bill."  137 F.3d at 578 n.5.

and personal interest in its constitutionality, but this interest is not distinguishable from the injury suffered by all members of the state legislature if the statute is subsequently preempted.  This type of claimed interest has been held by other courts to be "nothing more than an 'abstract dilution of institutional legislative power,'" which "does not entitle individual legislators to seek a judicial remedy."  *Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1338 (C.A.D.C. 1999) (denying standing to state legislators alleging the threat of federal preemption caused sufficient institutional injury to challenge a federal statute which removed the power of the Alaska Legislature to control hunting and fishing on federal lands within Alaska) (quoting *Raines*, 521 U.S. at 826).[4] Similarly, in *Raines*, the Court emphasized the importance of the fact that the plaintiffs had alleged an institutional injury in their official capacities which necessarily damaged all members of the legislature equally, distinguishing those circumstances from situations in which individual legislators had been found to have standing based on their having "been singled out for specially unfavorable treatment as opposed to other Members in their respective bodies."  521 U.S. at 821; *see also Newdow v. U.S. Congress*, 313 F.3d 495, 500 (9th Cir. 2002) ("Of course, every time a statute is not followed or is declared

---

[4] It is true, as the proposed intervenors argue, that the ability to make laws is a core legislative power.  However, at issue here is a relatively narrow aspect of that institutional power, similar to the injury at issue in *Babbitt*, where the the state legislature's power to control hunting and fishing on federal lands within Alaska was at stake.  Although the three legislators here characterize their interest as "protecting the exercise of their legislative power to introduce and pass laws in the fields of police arrest power and the regulation of identification documents," that characterization of their interest is drawn much too broadly.  A preemption finding in this case would not eliminate the proposed intervenors' ability to introduce and pass *any* laws in those fields, but rather would restrict only the breadth of their power to propose legislation in those fields inasmuch as they intersect with federal immigration regulation.  Thus, the dilution of the legislators' institutional power resulting from a preemption finding in the case at bar would be slight.

unconstitutional, the votes of legislators are mooted and the power of the legislature is

circumscribed in a sense, but that is no more than a facet of the generalized harm that

occurs to the government as a whole.  By the same token, the President's signing of the

legislation is also nullified, judges, who might have felt otherwise, are bound by the

decision, and citizens who relied upon or desired to have the law enforced are

disappointed.").[5]

It is well established, however, that "state legislators have standing to contest a

decision holding a state statute unconstitutional if state law authorizes legislators to

represent the State's interests."  *Arizonans for Official English v. Arizona*, 520 U.S. 43,

65 (1997) (citing *Karcher v. May*, 484 U.S. 72, 82 (1987)).  The proposed intervenors

---

[5] We note that a number of the cases cited by the proposed intervenors in support of their motion address or reference circumstances in which either the legislature as a whole or individual legislators authorized to act on behalf of the legislative bodies they served sought to intervene to defend legislation.  *Karcher v. May*, 484 U.S. 72, 76-77, 94-85 (1987) (state legislators authorized to represent the New Jersey Legislature had the authority to defend the constitutionality of a statute challenged in federal court only as long as the legislators continued to hold office, but declining to address "the issue whether individual legislators have standing to intervene and defend legislation for which they voted") (White, J., concurring); *Yniquez v. State of Ariz.*, 939 F.2d 727 (9th Cir. 1991) (citing *Karcher* and holding that ballot initiative sponsors had standing to intervene to defend initiative's constitutionality in part based on the court's belief that "a state legislature" would have standing if the ballot initiative were instead a statute); *Interactive Media Entertainment & Gaming Ass'n, Inc. v. Holder*, 2011 WL 802106, at *10 (D.N.J. Mar. 7, 2011) (recognizing that "the state legislature would have a vested institutional interest in defending a state law against a constitutional attack when the executive branch declines to defend it").  However, the question of whether the Indiana General Assembly as a legislative body might have a right to intervene under the circumstances presented here is not at issue.  Although the state legislature as a whole might have an institutional interest in defending the constitutionality of a state law when the executive branch declines to defend it, there is no argument here that the Indiana General Assembly has authorized the three proposed intervenors to act on its behalf.  Moreover, the Attorney General's position on the application of *Arizona* to the facts in this case does not mean that SEA 590 is left undefended as the Attorney General has neither consented to judgment in this case nor expressed a wholesale refusal to defend SEA 590.  Accordingly, we do not find these cases either applicable or particularly helpful in resolving the issues at bar.

here argue that, although Indiana state law does not authorize them to stand in for the State of Indiana to represent *its* interests, Indiana state law expressly authorizes them to protect their *own* official interests as legislators, and thus, they have standing on that basis.  The statute they cite, Indiana Code § 4-6-2-1.5, does not support their argument in that it clearly addresses the right state governmental officials and employees have to select the counsel of their own choosing to represent their personal interests whenever that governmental official or employee "is made a party to a suit" arising out of an official act.  *Id.* § 1.5(a), (f).  That is not the case here.  Indiana law provides that, although state officials may hire outside counsel of their choosing to protect their personal interests, "when the suit involves State officers or employees in their official capacities, the outside attorney may only act as an amicus curiae unless the Attorney General consents.  The Attorney General is charged by law with defending State agencies, officers and employees, and must, of necessity, direct the defense of the lawsuit in order to fulfill his duty to protect the State's interests."  *State ex rel. Sendak v. Marion County Superior Court, Room No. 2*, 373 N.E.2d 145, 148 (Ind. 1978) (internal citation omitted).  Accordingly, we reject the three legislators' contention that state law gives them standing on this basis, and hold that the proposed intervenors have failed to assert an interest sufficient to confer Article III standing.  Without standing, they cannot and do not satisfy the Rule 24(a)(2) interest requirement.

## B.  Adequacy of Representation

Even if the proposed intervenors could establish that they have standing to sue and a sufficient interest in this litigation under Rule 24(a)(2), they have failed to show that the

Attorney General is providing inadequate representation in the litigation before us.  In most cases, the burden of showing inadequacy is a minimal one.  *See Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (citations omitted).  However, in cases like this one, where the governmental entity responsible for protecting the interests of the intervenors is the party accused of inadequacy, the Seventh Circuit has held that "the representative party is presumed to adequately represent [the proposed intervenors'] interests unless there is a showing of gross negligence or bad faith."  *Id.* (citing *United States v. South Bend Cmty. Sch. Corp.*, 692 F.2d 623, 627 (7th Cir. 1982); *United States v. Bd. of Sch. Comm'rs of Indianapolis*, 466 F.2d 573, 575-76 (7th Cir. 1972)).  Here, "[t]he Attorney General is charged with the responsibility of defending the State and its officers and employees when sued in their official capacities."  *Sendak*, 373 N.E.2d at 148 (citing IND. CODE §§ 4-6-2-1, 1.5).  Thus, we find that the deferential standard applied in *Ligas* applies here as well.

As detailed above, the Attorney General has not engaged in or otherwise declared a wholesale refusal to defend SEA 590 nor has he consented to judgment in the case at bar.  His position with regard to Section 18 of SEA 590 as set forth in his response to Plaintiffs' motion for summary judgment has remained consistent throughout the litigation, and the proposed intervenors do not criticize that response which is still pending before the court.  Their disagreement is with the Attorney General's most recent legal argument regarding the applicability of the *Arizona* decision to certain provisions of Section 20 of SEA 590.  However, their dispute with regard to the application of relevant caselaw evidences neither gross negligence nor bad faith on the part of the Attorney

General,[6] and is thus insufficient to overcome the presumption that the representation is adequate.  *See Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) ("[Proposed intervenors] rely largely on post-hoc quibbles with the state's litigation strategy.  This does not provide the conflict of interest necessary to render the state's representation inadequate."); *Verizon New England v. Maine Public Utilities Comm'n*, 229 F.R.D. 335, 338 (D. Me. 2005) ("[F]ailure of a party to raise a particular legal argument favored by the prospective intervenor does not establish inadequate representation per se.") (citing *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999)).

For the foregoing reasons, we hold that the three legislators have failed to assert a specific, legally-protectable interest in this litigation sufficient to meet either the standing requirement or the second prong of the test under Rule 24(a)(2), and that they have also failed to show inadequate representation by the Attorney General as required by the fourth prong under Rule 24(a)(2).  Accordingly, we deny their request to intervene as of right.

## II.    Permissive Intervention

---

[6] The proposed intervenors correctly state that "Indiana courts define 'bad faith' as 'not simply bad judgment or negligence, rather it implies the conscious doing of a wrong,' and 'contemplates a state of mind affirmatively operating with furtive design or ill will.'"  Docket No. 205 at 24 (quoting *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 148 (Ind. Ct. App. 2004) (citations omitted)).  However, the evidence cited by the three legislators in support of their bad faith argument is insufficient even to raise the possibility that the Attorney General's July 31, 2012 response regarding the applicability of *Arizona* was anything other than his good faith interpretation of the relevant caselaw.  None of the evidence and argument adduced by the intervenors evidences bad faith on the part of the Attorney General nor does it show "a furtive intent to deny the State Senators a meaningful defense," as the proposed intervenors allege.

The proposed intervenors alternatively seek to intervene permissively under Rule 24(b).  Permissive intervention is allowed upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. Pro. 24(b).  Relevant factors in determining whether permissive intervention under Rule 24(b) is appropriate include undue delay and prejudice to other parties.  *See Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003).  The determination of whether to grant permissive intervention falls within the discretion of the court.  *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) (citation omitted).

Initially, we address the issue of the timeliness of the motion to intervene, at least as to Section 18 of the statute under review by the Court regarding consular-issued identification cards.  To determine whether a motion to intervene is timely, courts look at factors such as: "(1) the length of time the intervenor knew or should have known of [his] interest in the case, (2) the prejudice caused to the original parties by the delay, (3) the prejudice to the intervenor if the motion is denied, and (4) any other unusual circumstances."  *Reid L.*, 289 F.3d at 1017.  "As soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of this litigation he must move promptly to intervene."  *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983).

Here, the legislators seeking to intervene argue that their application is timely because it was not until Attorney General filed his response concerning the decision by the Supreme Court in *Arizona* on July 31, 2012, declining to actively defend the

14

constitutionality of certain provisions of Section 20 of SEA 590, that they became aware of their need to intervene.  However, with regard to Section 18, the Attorney General's July 31, 2012 response does not alter, much less withdraw, his arguments set forth previously in his April 9, 2012 summary judgment response and his June 15, 2011 memorandum opposing a preliminary injunction.  Because the Attorney General has maintained a consistent position on Section 18 throughout this litigation, the three legislators had more than a year to move to intervene to defend the constitutionality of that section.  These circumstances fall far short of establishing that they have moved "promptly."  Given the advanced stage of this litigation at which the motion to intervene was filed, we hold that the legislators' request was not timely with regard to their arguments in support of the constitutionality of Section 18.

The legislators' untimeliness is underscored by the fact that, as discussed above, the Attorney General has not withdrawn, consented to judgment, or otherwise left SEA 590 undefended.  Allowing them to intervene at this point would force Plaintiffs to defend against the disparate views of both the executive and legislative branches, and to do so well after the pending summary judgment motion has been briefed.  Our determination is also rooted in the well-established principles of Indiana law that provide: "The office of the Attorney General was re-created by the Indiana Legislature in 1943, in order to give the State independent legal representation and to establish a general legal policy for State agencies."  *Sendak*, 373 N.E.2d at 148 (citing *Indiana State Toll Bridge Commission v. Minor*, 139 N.E.2d 445 (Ind. 1957)).  Thus, "the Attorney General has exclusive power and right in most instances to represent the State, its agencies and

15

officers, and the agencies and officers may not hire outside counsel unless the Attorney General has consented in writing." *Banta v. Clark*, 398 N.E.2d 692, 693 (Ind. Ct. App. 1979) (citations omitted). Allowing the three individual legislators to intervene here in their official capacities as State Senators not only would conflict with this well-settled state law, but would provide the legislators a trump card with respect to the Attorney General's statutorily derived discretion in this context. Informed as well by the cautious restraints imposed by courts on the exercise of their discretionary powers to take pains to avoid entering the fray of interbranch political controversies, we deny the proposed intervenors' request to intervene permissibly.

## III.    Conclusion

For the foregoing reasons, we <u>DENY</u> the legislators' Motion to Intervene. In light of this ruling, the State Defendants' Motion for Reconsideration and Motion to Strike are <u>DENIED AS MOOT</u>. The case will proceed accordingly.

IT IS SO ORDERED.

Date: _____03/28/2013_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

16

Distribution:

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Andre I. Segura
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
asegura@aclu.org

Cecillia D. Wang
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
cwang@aclu.org

Katherine  Desormeau
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
kdesormeau@aclu.org

Lee  Gelernt
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
lgelernt@aclu.org

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
ojadwat@aclu.org

Eric C. Bohnet
ATTORNEY AT LAW
ebohnet@gmail.com

Jillian Leigh Spotts
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jillian.spotts@indy.gov

Matthew J. Piers
HUGHES SOCOL PIERS RESNICK & DYM, LTD
mpiers@hsplegal.com

Jose J. Behar
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
jbehar@hsplegal.com

Joshua  Karsh
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
jkarsh@hsplegal.com

Garrett R. Roe
IMMIGRATION REFORM LAW INSTITUTE
groe@irli.org

Adam  Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
jefferson.garn@atg.in.gov

Kenneth Lawson Joel
INDIANA ATTORNEY GENERAL
kenneth.joel@atg.in.gov

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Micheal M. Hethmon
Immigration Reform Law Institute
25 Massachusetts Avenue NW, #335
Washington, DC 20001

Lynnette  Gray
JOHNSON GRAY& MACABEE
vhunter@embarqmail.com

Angela Denise Adams
LEWIS & KAPPES
aadams@lewis-kappes.com

18

Karen Tumlin
NATIONAL IMMIGRATION LAW CENTER
tumlin@nilc.org

Karen Tumlin
NATIONAL IMMIGRATION LAW CENTER
tumlin@nilc.org

Shiu-Ming Cheer
NATIONAL IMMIGRATION LAW CENTER
cheer@nilc.org

Linton Joaquin
National Immigration Law Center
joaquin@nilc.org

Linton Joaquin
National Immigration Law Center
joaquin@nilc.org

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org

Donald G. Banta
OFFICE OF THE ATTORNEY GENERAL
donald.banta@atg.in.gov

Patricia Orloff Erdmann
OFFICE OF THE ATTORNEY GENERAL
Patricia.Erdmann@atg.in.gov

Clifford Lee Reeves, II
U.S. DEPARTMENT OF JUSTICE
lee.reeves@usdoj.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

William W. Barrett
WILLIAMS HEWITT BARRETT & WILKOWSKI LLP
wbarrett@wbwlawyers.com